IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **VIKING AUTOMATIC SPRINKLER COMPANY,** *doing business as* **VFP Fire Systems** | § § § § § | **PLAINTIFF** |
| **v.** | § § § | **Civil No. 1:24cv123-HSO-BWR** |
| **O'NEAL CONSTRUCTORS, LLC** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT O'NEAL CONSTRUCTORS, LLC'S MOTION [7]
TO COMPEL ARBITRATION AND FOR MANDATORY/
DISCRETIONARY STAY PENDING ARBITRATION**

BEFORE THE COURT is Defendant O'Neal Constructors, LLC's Motion [7] to Compel Arbitration and for Mandatory/Discretionary Stay Pending Arbitration. Having considered the Motion [7], the record, and relevant legal authority, the Court finds that Defendant O'Neal Constructors, LLC's Motion [7] to Compel should be granted, that Plaintiff Viking Automatic Sprinkler Company should be ordered to submit its claims against Defendant O'Neal Constructors, LLC to arbitration, and that this case should be stayed and administratively closed pending the resolution of arbitration.

I. BACKGROUND

A. Factual background

According to the Complaint, Calgon Carbon Corporation ("Calgon") owns and operates a commercial facility in Bay St. Louis, Mississippi, and commenced a project to construct additions to it.  State Court Record [1-1] at 8.  As part of this

construction project, Calgon entered into a contract ("the Prime Contract") with Defendant O'Neal Constructors, LLC ("O'Neal") as the general contractor. *Id.* O'Neal in turn entered into a subcontract ("the Subcontract") with Plaintiff Viking Automatic Sprinkler Company, doing business as VFP Fire Systems ("VFP" or "Plaintiff"), to perform certain work involving fire protection systems. *Id.*

The Subcontract included provisions for dispute resolution, which required that "[a]ny controversy, claim or dispute arising out of or in any way in connection with the Subcontract or the Project which the parties do not promptly adjust and informally resolve, shall be finally resolved according to the procedures specified herein below." *Id.* at 28. Relevant here are the Subcontract's mediation and arbitration provisions:

> Mediation: If the parties fail to reach agreement by direct negotiation within sixty (60) days from the commencement of the negotiation, the parties will submit the dispute to nonbinding mediation unless mutually agreed otherwise. The parties shall select a mediator. If the parties cannot agree upon a mediator, they shall conduct such mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association. The mediation shall be held in Greenville, South Carolina.
>
> . . .
>
> Arbitration: Claims not resolved by mediation shall be decided by arbitration, which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. . . . All issues regarding whether a dispute is arbitrable pursuant to this provision shall be determined by the arbitrator. The parties acknowledge this agreement involves interstate commerce and is governed by the Federal Arbitration Act. . . .

*Id.* at 29.

Plaintiff claims that it diligently performed work and supplied materials under the Subcontract, but that O'Neal has not fully paid it for the services rendered or materials provided, with a total principal amount of $190,281.11 remaining owed. *Id.* at 8. Plaintiff filed a claim of lien of $190,281.11 in the land records of Hancock County, Mississippi, and mailed the lien notice to Calgon pursuant to Mississippi Code § 85-7-405 on October 4, 2023. *Id.* at 8-9.

B.  Procedural history

On March 22, 2024, Plaintiff filed suit against Calgon and O'Neal in the Circuit Court of Hancock County, Mississippi, bringing four claims. *Id.* at 1-11. Counts I, II, and III asserted breach of contract, breach of the duty of the good faith and fair dealing, and "payment action" claims against O'Neal. *Id.* at 9-11. Count IV advanced a lien enforcement claim against Calgon. *Id.* at 11.

Calgon, with O'Neal's consent, removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. *See* Not. [1]; Joinder [3].[1] O'Neal then filed the instant Motion [7] to Compel Arbitration and for Mandatory/ Discretionary Stay Pending Arbitration, *see* Mot. [7], which is fully briefed, *see* Resp. [20].[2]

---

[1] Plaintiff later voluntarily dismissed its claims against Calgon without prejudice. *See* Notice [19].

[2] O'Neal did not file a rebuttal, and the time for doing so has long passed. *See* L.U. Civ. R. 7(b)(4).

3

C.     O'Neal's Motion [7] to Compel Arbitration and for Mandatory/Discretionary Stay

O'Neal asserts that the Subcontract contains a valid, binding arbitration agreement governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. Mem. [6] at 3. According to O'Neal, because the arbitration agreement delegates any scope questions to the arbitrator, the Court need not consider whether Plaintiff's claims fall within the scope of the arbitration agreement. *Id.* at 3-5. O'Neal also argues that, in accordance with 9 U.S.C. § 3, the FAA mandates that this action be stayed pending arbitration. *Id.* at 5. Even if a stay is not mandatory, O'Neal contends that the Court should exercise its discretion and stay this lawsuit pending resolution of the arbitration. *Id.* at 7-10.

In its Response [20], Plaintiff "does not dispute that its subcontract with O'Neal . . . contains a valid and binding arbitration agreement and, thus, does not object to this matter being sent to arbitration." Resp. [20] at 1. Plaintiff also "does not dispute that the remainder of this matter be stayed pending the outcome of the arbitration between it and O'Neal." *Id.* However, Plaintiff "requests that, prior to the parties being forced to arbitrate the dispute, this Court issue an order requiring that [Plaintiff] and O'Neal mediate their disputes per the terms of the Subcontract." *Id.*

## II. DISCUSSION

A.     Relevant law

The FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save

4

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 2 of the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution."  *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  Arbitration agreements must be enforced "according to their terms."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  A court "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

In considering whether to compel arbitration under the FAA, courts generally follow a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).  First, a court decides whether the parties agreed to arbitrate the dispute at issue. *Id.*  To answer this question, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* (quotation omitted).  Second, a court determines whether legal constraints external to the agreement foreclose arbitration. *Id.*

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself."  *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018); *see also Rent-*

5

*A-Ctr.*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").[3]  If a delegation clause exists, "absent a challenge to the delegation clause itself, [the Court] will consider that clause to be valid and compel arbitration," *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018), "leaving any challenge to the validity of the Agreement as a whole for the arbitrator[,]" *Rent-A-Ctr.*, 561 U.S. at 72.  However, the Court "may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so."[4]  *Arnold*, 890 F.3d at 551-52.

      Finally, Section 3 of the FAA provides that

> upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  "Here, as in other contexts, the use of the word 'shall' 'creates an obligation impervious to judicial discretion.'"  *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).

---

[3] To the extent South Carolina law applies as O'Neal argues, *Rent-A-Center* is consistent with South Carolina law.  *See Palmetto Wildlife Extractors, LLC v. Ludy*, 869 S.E.2d 859, 863-66 (S.C. Ct. App. 2022), *reh'g denied* (Feb. 25, 2022); *Masters v. KOL, Inc.*, 846 S.E.2d 893, 899 (S.C. Ct. App. 2020).

[4] In the Fifth Circuit, the "clear and unmistakable evidence" standard is governed by federal and not state law.  *Arnold*, 890 F.3d at 552.

B.     Analysis

Plaintiff does not oppose arbitration, but asks the Court to first require mediation under the terms of the Subcontract.  *See* Resp. [20] at 3.  In contrast, O'Neal seeks to enforce the delegation provision within the arbitration agreement. Mem. [8] at 3-4.

When a party attempts to enforce a delegation clause, a court looks only "to see if an agreement to arbitrate was formed, then determine[s] if it contains a delegation clause." *Edwards*, 888 F.3d at 744.  If an agreement was formed and a valid delegation clause exists, the analysis ends and a court is to compel arbitration. *See id.* at 743-46.

The Court applies state law to determine whether an arbitration agreement was formed.  *Id.* at 745.  The Subcontract contains a choice-of-law provision specifying that South Carolina law controls this inquiry.  State Court Record [1-1] at 32.  "Because the validity of that provision has not been called into question," the Court applies South Carolina law.  *Edwards*, 888 F.3d at 745.  Under South Carolina law, a contract is formed when there is "a meeting of the minds between the parties as to all essential and material terms" and the parties "manifest a mutual intent to be bound." *Simmons v. Benson Hyundai, LLC*, 881 S.E.2d 646, 649 (S.C. Ct. App. 2022), *reh'g denied* (Mar. 25, 2022), *cert. denied* (Mar. 30, 2023). Here, the Subcontract itself and the parties' performance under it, as well as their attempts to enforce it, show a mutual intent to be bound.  *See, e.g.*, State Court

7

Record [1-1] at 13 ("For good and valuable consideration as set forth herein, Contractor and Subcontractor legally bind themselves as follows: . . .").

Turning to essential terms, the arbitration agreement includes mutual promises to arbitrate disputes, procedures and rules for arbitration, and a delegation provision. *See id.* at 29. As the parties have raised no formation issues,[5] the Court finds that the Subcontract evidences a meeting of the minds as to all the essential terms of a contract. *See id.*

As for whether the arbitration agreement is valid and the dispute falls within the scope of the agreement, the parties have expressed their intent to delegate "[a]ll issues regarding whether a dispute is arbitrable pursuant to this provision" to the arbitrator.[6] *Id.* Because such a provision operates as "an additional, antecedent agreement" the party seeking arbitration is asking this Court to enforce, the only question is "whether the delegation provision is valid under § 2." *Rent-A-Ctr.*, 561 U.S. at 69. In addressing this question, the Supreme Court has held that the rule that a party seeking to challenge the validity of an arbitration agreement must specifically challenge the arbitration agreement, as opposed to the contract as a whole, likewise applies to a delegation clause. *Id.* at 70-72. Thus, a party seeking

---

[5] In fact, Viking does not dispute that a valid and binding arbitration agreement was formed. *See* Resp. [20] at 1.

[6] The arbitration agreement also incorporates the Construction Industry Arbitration Rules of the American Arbitration Association, State Court Record [1-1] at 29, which grants the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement[,]" Constr. Indus. Arb. Rules of the Am. Arb. Ass'n. at 18. The Fifth Circuit has held that adoption "of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

to challenge the delegation clause in the arbitration agreement must specifically challenge the delegation provision itself. *Id.*

Here, Plaintiff has not challenged the delegation provision. In fact, "[n]owhere in [Plaintiff's] opposition to [O'Neal's] motion to compel arbitration did [it] even mention the delegation provision." *Rent-A-Ctr.*, 561 U.S. at 72.[7] Therefore, because "there is an agreement to arbitrate with a delegation clause, . . . absent a challenge to the delegation clause itself, [the Court] will consider that clause to be valid and compel arbitration." *Edwards*, 888 F.3d at 744.

C.   Whether this case should be stayed

O'Neal asks that this case be stayed. *See* Mot. [7]. Because the Court is compelling arbitration of Plaintiff's claims against O'Neal, under Section 3 of the FAA it must stay this case as to those claims. *See* 9 U.S.C. § 3; *Smith*, 601 U.S. at 476.

---

[7] Even if no delegation provision existed, the Supreme Court has held that the issue of whether a condition precedent to arbitration has been satisfied is for the arbitrator to decide, not the Court. *See BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014). Other courts, including some within the Fifth Circuit, have held that such a rule applies to arbitration agreements requiring mediation before arbitration. *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 (4th Cir. 2015) (holding *BG Grp.* applies when the condition precedent is mandatory mediation); *Home Care Providers of Texas v. Cross*, No. 3:19-CV-1680-N, 2020 WL 1819984, at *3 (N.D. Tex. Apr. 10, 2020) ("While the agreement includes a mediation provision, the Court finds that the issue of whether the condition precedent has been fulfilled is an issue for the arbitrator, not the Court, to decide."); *Valenzuela v. Crest-Mex Corp.*, No. 3:16-CV-1129-D, 2019 WL 3803626, at *2 (N.D. Tex. Aug. 13, 2019) ("And as the court explained in *Valenzuela I*, the question whether mediation (or, for that matter, any condition precedent) must precede arbitration is for the arbitrator."); *Valenzuela v. Crest-Mex Corp.*, No. 3:16-CV-1129-D, 2017 WL 3311203, at *3 (N.D. Tex. Aug. 3, 2017) (citing *Chorley* and holding that "the question whether mediation must precede arbitration under the 2016 Agreement is for the arbitrator").

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant O'Neal Constructors, LLC's Motion [7] to Compel Arbitration and for Mandatory/Discretionary Stay Pending Arbitration is **GRANTED**, and Plaintiff Viking Automatic Sprinkler Company is **ORDERED** to submit its claims against Defendant O'Neal Constructors, LLC to arbitration.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is **STAYED and ADMINISTRATIVELY CLOSED** for statistical purposes pending the outcome of the arbitration between Plaintiff Viking Automatic Sprinkler Company and Defendant O'Neal Constructors, LLC.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the parties shall move to lift the stay and reinstate this case to the active docket within 30 days after the conclusion of the arbitration.

**SO ORDERED AND ADJUDGED**, this the 5th day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE